(670 P.2d 534)
No. 54,922

M & B INVESTMENT, INC., A Kansas Corporation, *Appellant*, v.
CRAIG SMITH and KAREN J. SMITH, *Appellees*.

Opinion
filed October 13, 1983.

*David J. Wood*, of Dresie, Jorgensen & Wood, P.A., of Wichita, for the appellant.

*John H. Gibson*, of Boyer, Donaldson & Stewart, of Wichita, for the appellees.

Before FOTH, C.J., SWINEHART and MEYER, JJ.

FOTH, C.J.: This is an action to foreclose a subcontractor's lien on defendants' residence claimed by plaintiff for materials used in construction. The case was tried to the court on stipulated evidence. The trial court found that plaintiff's lien statement was not properly verified and that the statement taken as a whole was "confusing." It therefore found the lien void, ordered it vacated and released, and rendered judgment in favor of the defendant homeowners. Plaintiff appeals.

Plaintiff M & B Investment, Inc., is a Kansas corporation wholly owned by Howard T. Murray, its president. Over the years it has engaged in a number of enterprises including the real estate business, development, land owning, and distributing fireplaces and kitchen cabinets. Its kitchen cabinet business involved here was conducted under the name "Murray Distributors." Murray Distributors was housed in the same building as M & B but with a different street address (9099 rather than 9103 W. Central). It kept a separate set of books from M & B and is variously described in the record as a "subsidiary" or a "branch" of M & B. It was not, however, separately incorporated; its assets and liabilities were all those of M & B, the "parent" corporation.

Defendants Craig and Karen Smith contracted with Sunflower Contractors, Inc., through its president Charles Brodie, to build their new home. When it came time to install kitchen cabinets Brodie sent the Smiths to Murray Distributors to select them. In due course, under contract with Sunflower, Murray delivered materials to the Smith residence having an agreed value of $9,578.47. The cabinets were installed March 31, 1981, but not paid for by Sunflower. Plaintiff's lien statement was filed May 11, 1981:

32

## STATEMENT by any Person under Sub-Contract with a Contractor, etc. for Labor or Material, etc.

Name of Owner....Craig and Karen J. Smith.........(husband & wife)........................

Name of Contractor...Charles M. Brodie...dba...Sunflower Contractors...Inc...........................

Name of Claimant.......M & B Investment, Inc....dba...Murray Distributors.........................

The undersigned, Sub-Contractor and Claimant claims a Lien upon the following-described property, to-wit:

-----------------------------------------------------------------------------------

.........Legally known as:...Lot 4, Block 4, Westlink Lakes Estates......................

Wichita, Sedgwick County, Kansas

-----------------------------------------------------------------------------------

.........Commonly known as: 941 Toh-N-Hah

Wichita, Kansas    67212

-----------------------------------------------------------------------------------

-----------------------------------------------------------------------------------

-----------------------------------------------------------------------------------

-----------------------------------------------------------------------------------

-----------------------------------------------------------------------------------

for that heretofore the said....Murray Distributors,.......................Sub......contractor as aforesaid did

enter into a contract with......Contractors named above

the owner.....of the property aforesaid for the..purchase of Quality Wood Products kitchen cabinets

...delivered to above address.

in and upon said property; and that heretofore on divers days from the............31st...............day of

.......March.........................., 19 81..., up to and including the....31st...............day of

.......March.........................., 1981...., the undersigned did under a sub-contract with said con-

tractor perform labor and furnish material for......Construction of.........................the buildings and

improvements aforesaid.

The amount claimed for said labor and material and still due to the undersigned from said contractor is

......Nine Thousand Seven Hundred Eighteen Dollars and Five Cents $9718.05 ..........DOLLARS

and said labor and material and the items thereof, as nearly as practicable, are set forth in the bill of items hereto

attached, made a part hereof and marked Exhibit "A."

That labor was last performed and material was last furnished under said sub-contract on the....31st....

day of.....March.........................., 19 81

Howard T. Murray                    Claimant.

State of Kansas,....Sedgwick..................County, ss.

.......................Howard T. Murray......................................being duly sworn deposes and

says that he is (1) ....President of M & B Investment, Inc................................

and that the foregoing statement is true.

Subscribed and sworn to before me this......11st......day of....May.............A/D, 19 81

MANLEY A. PARSONS
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Expires 10-23-34

Manley A. Parsons

Notary Public.

My commission expires..................................., 19......

(1) "The above-named claimant," or "a member of the claimant firm," etc., as the case may be.

Attached were itemized invoices on the letterhead of Murray Distributors, making no reference to M & B Investment, Inc.

In finding the verification insufficient the trial court relied on *Ekstrom United Supply Co. v. Ash Grove Lime & Portland Cement Co.*, 194 Kan. 634, 400 P.2d 707 (1965). We believe that reliance misplaced. In that case the claimant was a corporation. It executed the lien statement as "Ekstrom United Supply Company by s/ W. L. Johnston" as claimant. The majority found so much of the statement to be "regular and unimpeachable." 194 Kan. at 636.

However, the court reasoned, the lien statute requires the lien statement to be verified by the claimant. In support of this proposition it cited *Reeves v. Kansas Coop. Wheat Mk't. Ass'n.*, 136 Kan. 306, 15 P.2d 446 (1932), a case where the statement was merely acknowledged and not verified at all. Nevertheless, the court found the *Ekstrom* verification insufficient because it read:

" 'I do solemnly swear that I am the claimant above named and that the foregoing statement is true in every particular.

" ' s/ W. L. Johnston ' "

194 Kan. at 635.

The deficiency lay in the fact that Johnston had verified it as an individual, seeming to be an individual claimant, whereas the real claimant was the corporation. Had Johnston shown in his affidavit that he was verifying the statement on behalf of the corporate claimant the lien statement would presumably have been upheld.

Here the lien statement shows after "Name of Claimant": "M & B Investment, Inc. dba Murray Distributors." No one challenges the generally accepted meaning of dba as "doing business as." It is a commonly employed abbreviation connoting that a natural person, partnership or corporation is or has been carrying on business under a trade name. The opening lines of this lien statement made it clear, in our opinion, that the claimant was the corporation "M & B Investment, Inc.," and that it had been doing business in this transaction under the name of "Murray Distributors."

The verification clearly shows it is made on behalf of the corporation. Thus the defect found in *Ekstrom* is not present in

this case; the verification is *by the claimant* through an agent — the only way a corporation may swear to anything.

The trial court expressed the thought that the verification should have included "dba Murray Distributors" to match the name of the claimant shown in the body of the lien statement. The phrase "dba Murray Distributors" is only descriptive; it does not form part of the *name* of the claimant. It served the laudable purpose of explaining to the owners the connection between the claimant and their kitchen cabinets, but was otherwise surplusage.

The trial court and the parties discuss the legal effect of a corporation's doing business under an assumed or trade name. We do not read the trial court's decision as being based in any way on this factor, and the parties do not brief it as a claim of error. Defendants, indeed, make clear their view that the verification question is controlling and seek to uphold the trial court on that issue. We would only note that many corporations — even the Fortune 500 — do business in the names of unincorporated "divisions" or under out-and-out trade names. Kansas, unlike many states, has no statutory requirement for the registration or other disclosure of such assumed names.

As part of this discussion defendants suggest that "Murray Distributors" should have been named as the claimant, since that was the name with which defendants, as consumers, were familiar. Murray Distributors, however, had no independent legal existence and no capacity to sue. A lien filed in that name would have been quickly expunged by the court. As to defendants' knowledge of the existence of Murray Distributors, that came about only because of the way in which the contractor chose to transact business. In many a subcontractor's lien case the owner has no knowledge of the identity or even existence of the subcontractor or materialman until receiving notice of the lien. Defendants here were better off than most.

Two other matters may be mentioned briefly. First, the reference to Murray Distributors as the subcontractor right after the description of the property is the apparent result of a misreading of the printed form by the draftsman of the statement; the form calls for a rerecitation of the contract between the contractor and the owner. The error is not misleading, however, and tells the owner more about the relationship between the parties than a

"correct" filling in of the blanks would have done. It certainly meets the objectives recognized in *Toler v. Satterthwaite,* 200 Kan. 103, 107, 434 P.2d 814 (1967):

"The purpose of requiring service of the notice of the lien is to advise the owner of the property of the existence of the lien, afford him an opportunity to investigate the claim, determine its validity, and avoid paying twice for the same account."

Second, the signature of the lien statement, as opposed to the verification, by Howard T. Murray individually does not detract from the validity of the overall document. There is no requirement that a lien statement be signed, but only that it be verified by the claimant. *Lumber Co. v. Osborn,* 40 Kan. 168, 172, 19 Pac. 656 (1888); *Deatherage v. Woods,* 37 Kan. 59, 62, 14 Pac. 474 (1887).

In short, K.S.A. 60-1102, as applied to subcontractors through K.S.A. 1982 Supp. 60-1103, requires a *verified* lien statement containing four things:

"(1) The name of the owner,
"(2) the name of the claimant,
"(3) a description of the real property,
"(4) a reasonably itemized statement and the amount of the claim . . . ."

As indicated above, this lien statement was properly verified. In addition, it contained the four statutory elements. Accordingly it was error not to enforce it.

Reversed and remanded for further proceedings.